# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CASHRETRIEVER SYSTEMS, INC., an Alabama Corporation,** ) | |
| ) | |
| **PLAINTIFF,** | |
| ) | |
| **VS.** | **2:04-cv-02519-JHH** |
| ) | |
| **KCI USA, INC., a Delaware Corporation,** ) | |
| ) | |
| **DEFENDANT.** ) | |

## MEMORANDUM OF DECISION

The court has before it two motions for summary judgment.  The first motion (doc. #36) was filed by defendant, KCI USA, Inc. on November 11, 2005. Pursuant to the court's November 14, 2005 order, defendant's motion was deemed submitted, without oral argument, on December 12, 2005.  The second motion (doc. #39) was filed by plaintiff, CashRetriever Systems, Inc. (CSI), on November 21, 2005.  Pursuant to the court's November 22, 2005 order, plaintiff's motion was deemed submitted, without oral argument, on January 13, 2006.  The court considers both motions together.

### I. Procedural History

Plaintiff CSI commenced this action on August 20, 2004 by filing a

complaint in this court alleging breach of contract and misappropriation of trade secrets. On September 10, 2004, KCI answered the complaint and filed a counterclaim alleging breach of contract. KCI's motion for summary judgment contends that, as to the allegations in the complaint, no genuine issue of material fact exists and that KCI is entitled to judgment as a matter of law regarding the complaint. CSI also filed a motion for summary judgment regarding the counterclaim filed by KCI and Count II of its complaint. That motion asserts that no genuine issue of material fact exists and that CSI is entitled to judgment as a matter of law.

Both parties have filed briefs and submitted evidence in support of their respective positions. With respect to defendant's motion for summary judgment, defendant submitted a brief (doc. # 37) and evidence[1] (doc. # 36) in support of its motion on November 11, 2005. On December 12, 2005, plaintiff filed a brief (doc. # 46) in opposition to defendant's motion for summary judgment, which incorporated its brief and evidence in support of its own motion for partial summary judgment. On December 19, 2005, defendant filed a brief (doc. # 47) in reply to plaintiff's opposition.

---

[1] KCI submitted the following evidence: Danny Hinson deposition excerpt; Kelley Moore deposition excerpt; Don Payne deposition excerpt; Matt Davis deposition excerpt; Pronce Acker deposition excerpt; and Diane Ryder deposition excerpt.

With respect to plaintiff's motion for partial summary judgment on KCI's counterclaim, plaintiff submitted a brief (doc. # 40) and evidence[2] (doc. #41) in support of its motion on November 21, 2005.  On January 6, 2006, defendant filed a brief (doc. # 49) and evidence[3] (doc. #48) in opposition to plaintiff's motion for partial summary judgment.  On January 13, 2006, plaintiff filed a brief (doc. # 50) in reply to defendant's opposition.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and

---

[2] CSI submitted the following evidence: deposition of Matt Davis; deposition of Kelley Moore; deposition of Diane Ryder; deposition of Becky Perrett; deposition of Don Payne; and affidavit of Danny L. Hinson.

[3] KCI submitted the following evidence: KCI's response to plaintiff's interrogatories and requests for production; documents produced to plaintiff by KCI and referenced to in KCI's response to interrogatories; affidavit of Natalie G. Kovach; December 19, 2005 letter from David Upshaw to Steve Poer regarding property belonging to CSI; and documents produced to plaintiff by KCI regarding addition of word "undisputed" to paragraph 10(a)(1) of agreement.

identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. See id. at 323. Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. See id. at 324.

The substantive law will identify which facts are material and which are irrelevant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial

4

burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the

movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  See Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[4]

CSI is a corporation that licenses its accounts receivable management and collection resolution system to customers for the customers' use in collection of the customers' accounts receivable and other debts.  (Compl. ¶¶ 7, 9.)  KCI is a durable medical equipment provider and solicited CSI's assistance in collecting its accounts receivable.  (Id. ¶ 6; Matt Davis Dep. at 30-36.)  On January 28, 2003, CSI and KCI entered into an agreement for the use of CSI's accounts receivable

---

[4] If the facts are in dispute, they are stated in a manner most favor to the non-movant. See Fitzpatrick, 2 F.3d at 1115.

management and collection resolution system by KCI.  (Compl. ¶ 8; Ex. A to Compl.)

### A.  The Agreement

Under the agreement, KCI was to pay an annual license fee[5] of $200,000 per year for three years.  (Ex. A. to Compl. at 13.)  This fee covered the use by KCI of CSI's system, or application.  (Id. at 4; Moore Dep. at 131-33.)  The application is part of the collection resolution system, and is a computer software program that is installed on CSI's server which is located in Birmingham, Alabama.  (Hinson Dep. at 90.)  The application is not installed on any computer or hardware of KCI; to gain access to the application, KCI had to log into CSI's server using a password.  (Payne Dep. at 13-14.)

Section 10 of the agreement contains the provisions relating to default and termination.  (Ex. A to Compl. at 8.)  As relevant to this case, section 10(a) of the agreement provides that KCI is in default if

(1) Client fails to pay CSI any undisputed charges or taxes required to be paid hereunder within 30 days following the late fee period . . .; or
(2) Client is in default under any provision of this Client Agreement for a period of 30 days following receipt of written notification of Client's failure to comply therewith . . . .

---

[5] Other compensation was also owed under the agreement, such as monthly transaction fees.  (See Ex. A to Compl.)

(Id.)  Further, as relevant to the facts of this case, section 10(c) of the agreement provides that CSI is in default if

    (1)    . . .
    (2)    CSI fails to perform its duties or obligations under this Agreement in implementing the System in accordance with the System Documentation . . . .

(Id. at 9.)  If KCI is in default, section 10(b) of the agreement permits CSI to exercise one or more of the following remedies:

    (1)    Terminate/cancel this Agreement; and/or
    (2)    Declare all amounts under this Agreement to be immediately due and payable in full to CSI; and/or
    (3)    Enter Client's premises and repossess all supplies, Software, manuals, equipment, and other material related to the Software; and/or
    (4)    Cease performance of any maintenance services related to the Software (if applicable), whether under the terms of the Client Agreement, or under the terms of a separate maintenance Agreement; and/or
    (5)    Exercise any other remedies available to CSI in law or in equity for Client default.

(Id. at 8-9.)  If CSI is in default, section 10(d) states that KCI "will"

    (1)    Terminate/cancel this Agreement; and/or
    (2)    Seek a prorated refund of all sums paid to CSI for services which were not utilized; and/or
    (3)    Retain all supplies, Software, manuals, equipment, and other material related to the Software for the remainder of the term, at which time CSI or its successor may request the return of all supplies, Software, manuals, equipment, and other materials related to the Software; and/or
    (4)    Exercise any other remedies available to Client in law or in

equity for CSI default.

(Id. at 9.)

### B.  July 30, 2004 Letter

On July 30, 2004, KCI sent a letter to the chief executive officer of CSI which stated that CSI had defaulted under the agreement.  (Ex. 2 to Compl.)  KCI stated that it was "exercising its rights under Sections 10(c) and (d) of the Agreement and is terminating the Agreement effective immediately."  (Id. at 1.)  The letter then lists seven instances where "CSI . . . defaulted on its obligations." (Id.)  The "defaults" include the following: (1) cash tracking not available 49% of the time between April and June 2004; (2) system performance failure 3% of the time, resulting in almost $11,000 loss to KCI; (3) failures to download from KCI Delair, with failure rates of 60% in April, 25% in May and 50% in June; (4) cancellation of scheduled weekly conference calls and failure to be prepared on these calls; (5) refusal to upgrade interface to reflect the correct debtor information; (6) zero balance accounts that remain in the collector's queues; and (7) refusal to create weekly reconciliation of systems.  (Id. at 1-2.)

The letter further stated that, in addition to termination of the agreement, KCI sought "prorated reimbursement of all sums paid to CSI for which services have not been utilized, as set forth in Section 10(d) of the Agreement." (Id. at 2.)

9

KCI also informed CSI that the default and resulting termination of the agreement meant that KCI would not pay the remainder of the fees due under the agreement. (Id.)  KCI stated that it would apply any money past due to "offset the remaining amounts owed by CSI in reimbursement for sums paid to CSI for which services have not been utilized." (Id.)

### C.  The Aftermath of the Letter

When CSI received the letter, CSI believed that the letter, and KCI's actions constituted a repudiation of the agreement.  (Davis Dep. at 41, 54, 77-78, 81; Compl. ¶ 14.)  CSI, however, investigated KCI's allegations of nonperformance and representatives from both parties participated in a conference call where CSI communicated its willingness to respond to the allegations.  (Davis Dep. at 56-59.) The parties did not come to an agreement, and on October 9, 2004, CSI deleted KCI's access to the application.  (Hinson Dep. at 57-58; Moore Dep. at 131-32; Hinson Aff.)  CSI then filed the instant complaint.

### IV. Applicable Substantive Law and Analysis

CSI's complaint contains the following claims: (1) anticipatory breach of contract[6] and (2) misappropriation of trade secrets.  KCI's counterclaim alleges

---

[6] Plaintiff's complaint actually names the claim in Count I as "breach of contract."  A fair reading of the allegations contained in Count I, however, is that plaintiff's claim is really one of anticipatory breach or repudiation.  This reading of the complaint is confirmed by plaintiff's

breach of contract. The agreement provides, and the parties agree, that the court should apply Texas law to the claims before it. (Id. at 11.) The court will first address claims made by CSI and then address KCI's counterclaim.

### A. Anticipatory Breach of Contract by KCI

Repudiation or anticipatory breach is a positive and unconditional refusal to perform the contract in the future, expressed either before performance is due or after partial performance. Van Polen v. Wisch, 23 S.W.3d 510, 516 (Tex. Civ. App. 2000). It is conduct that shows a fixed intention to abandon, renounce, and refuse to perform the contract. In re Braddock, 64 S.W.3d 581, 585 (Tex. Civ. App. 2001); Hauglum v. Durst, 769 S.W.2d 646, 651 (Tex. Civ. App. 1989). Repudiation may be proven by words or actions. Braddock, 64 S.W.3d at 585.

The actions of KCI do not constitute an anticipatory breach of contract or repudiation of the contract as a matter of law. The July 30, 2005 letter clearly states that KCI was invoking its rights under the contract to terminate the agreement between the parties upon its belief that CSI had breached the contract and listed seven instances of noncompliance by CSI. Under Texas law, "the

---

opposition to KCI's motion for summary judgment (doc. #46 at 7-14). In that opposition, CSI argues that "it was KCI which repudiated the Contract and broke off relations with CSI, manifesting a clear intention to break the contract, not to use the CSI system, and to avoid paying for CSI's services." (Pl.'s Opp. at 7.) The case law cited in support of CSI's argument are all cases of repudiation, and not of mere breach of contract.

refusal by one party to honor its obligations under a contract will not constitute an anticipatory breach, if made in good faith and as the result of misunderstanding or mistake." Earl Hayes Rents Cars and Trucks v. City of Houston, 557 S.W.2d 316, 321 (Tex. Civ. App. 1977); see also Englehart v. Volunteer State Life Ins. Co., 195 S.W.2d 798, 802 (Tex. Civ. App. 1946); Mobley v. New York Life Ins. Co., 55 S. Ct. 876, 878 (1935) ("Mere refusal, upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of the disability clause, to pay a monthly benefit when due is sufficient to constitute a breach of that provision, but it does not amount to a renunciation or repudiation of the policy."). CSI has not produced any evidence to show that KCI's construction of the contract and the allegations of seven instances of noncompliance were made in bad faith.[7] See Preston v. Love, 240 S.W.2d 486, 488 (Tex. Civ. App. 1951). It is unnecessary to determine if this construction of the contract was right or wrong. See id. Therefore, under Texas law, there was no repudiation of the contract, and summary judgment is due to be granted in favor of KCI on Count I of the complaint.

---

[7] Although CSI states that the allegations are "unsupported by the record," CSI admits that some of the problems existed, but characterizes then as "minor." (Doc. #40 at 3-4.) CSI also admits that it tried to work with KCI regarding the problems listed. (Davis Dep. at 56-59.) This evidence does not support a finding of bad faith on the part of KCI.

### B. *Misappropriation of Trade Secrets*

The complaint titles Count II as "Misappropriation of Trade Secrets - Injunctive Relief." (Compl. at 5.) The substance of Count II "requests injunctive relief barring KCI from the copying, disclosure, or use of the CashRetriever System including, but not limited to, disclosures of trade secrets and propriety information to third parties or the use of such information to develop a copycat system." (Id. ¶ 19.) CSI also "reserve[d] the right to request" damages and fees to the extent that discovery revealed that KCI had misappropriated any trade secrets. (Id.)

In its briefs in support of its motion for summary judgment and in opposition to CSI's motion for summary judgment, KCI contends that CSI's misappropriation of trade secrets claim fails because CSI does not have any evidence of misappropriation or improper use of any trade secrets or proprietary information.[8] (Doc. # 37 at 13-41; Doc. # 49 at 20-22). KCI also argues that CSI has failed to present sufficient evidence on the essential elements for injunctive relief. (Doc. #47 at 9-10; Doc. #49 at 22-23). In response and in its own brief in

---

[8] The elements of misappropriation are: (1) existence of a trade secret; (2) breach of a confidential relationship or improper discovery of a trade secret; (3) use of the trade secret; and (4) damages. IBP, Inc. v. Klumpe, 101 S.W.3d 461, 476 (Tex. Civ. App. 2001) (citing Taco Cabana Int'l v. Two Pesos, Inc., 932 F.2d 1113, 1123 (5th Cir. 1991)). Specifically, KCI contends that CSI failed to present sufficient evidence of all four elements.

support of its motion for summary judgment, CSI does not contest KCI's argument. (Doc. # 40 at 11-13; Doc. # 46 at 14-15.) Instead, CSI contends that, under the contract, it is entitled to the return of certain property it provided KCI under the agreement. (Id.)

The court finds that CSI has abandoned its claim in Count II of the complaint for injunctive relief and for damages for misappropriation of trade secrets. The argument now advanced by CSI, an argument under the contract,[9] is not plead in the complaint. As such, the court will not address this argument.[10] Summary judgment is due to be granted in favor of KCI on Count II of the complaint.

### C. Breach of Contract by CSI

KCI filed a counterclaim and alleged that CSI "failed to perform its duties and obligations under the agreement in implementing the system in accordance with the system documentation. Further, . . . the Plaintiff has breached the agreement because the system fails to perform the operating functions as outlined

---

[9] Misappropriation of trade secrets is a common-law tort cause of action under Texas law. See Trilogy Software v. Callidus Software, Inc., 143 S.W.3d 452, 463 (Tex. Civ. App. 2004).

[10] Moreover, KCI contends that any such claim is now moot because it returned all CSI's property after KCI received CSI's motion for summary judgment. (Ex. 3 and 4 to doc. #49). CSI did not dispute this contention.

in the system description." (Counterclaim at ¶ 3.) CSI denies that the system failed to perform as promised.

The elements of a breach of contract claim under Texas law are (1) the existence of a valid contract between plaintiff and defendant, (2) the plaintiff's performance or tender of performance, (3) the defendant's breach of the contract, and (4) the plaintiff's damage as a result of the breach. Prime Prods., Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 636 (Tex. Civ. App. 2002). A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform. Methodist Hosps. of Dallas v. Corporate Communicators, Inc., 806 S.W.2d 879, 882 (Tex. Civ. App. 1991).

Again, in its briefs to this court, CSI failed to adequately respond to KCI's allegation of breach of contract. Instead, CSI continually argued its theory of repudiation which has been rejected. That being said, however, it is clear from the record that a question of fact remains as to CSI's performance under the contract. KCI cited specific allegations of nonperformance, and, although the court was forced to wade through the deposition transcripts to ascertain CSI's response to these allegations, CSI clearly disputes that many of the allegations of nonperformance occurred. (See, e.g., Ryder Dep. at 139-52.) As such, summary judgment is due to be denied on KCI's counterclaim.

## V.  CONCLUSION

In summary, the court finds that no material issues of fact remain as to plaintiff's claims and that defendant KCI USA, Inc. is entitled to judgment as a matter of law as to all claims asserted by plaintiff.  Pursuant to Federal Rule of Civil Procedure 54(b), such judgment will be entered as a partial final judgment as the court has determined that there is no just reason for delaying final judgment. As for defendant's counterclaim against plaintiff, the court finds that genuine issues of material fact remain, and summary judgment is due to be denied.

Accordingly, the court will enter two separate orders.  The first order will be a partial final judgment under Rule 54(b) as explained above.  The second order will deny plaintiff's motion for summary judgment on defendant's counterclaim.

**DONE** this the ___25th___ day of January, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE